THE LAW OFFICE OF KEVIN M. WELCH
Kevin M. Welch, (SBN 254565)
*Kevin@kmwlawoffice.com*
P.O. Box 494
Hermosa Beach, CA 90245
Tel.: (310) 929-0553
Fax: (310) 698-1626

Attorney for the Defendant,
Ulises Pizano-Diaz

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAGOUBZADEH LAW FIRM LLP, a California Limited Liability Partnership;<br><br>       Plaintiff,<br><br>  v.<br><br>ULISES PIZANO-DIAZ,<br><br>      Defendant. | **Case No.: 2:23-cv-08299-GW-MAR**<br><br>**MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR AN ORDER TREATING SPECIFIED ULTIMATE FACTS AS ESTABLISHED**<br><br>Hearing Date: **December 12, 2024**<br>Time: **8:30 a.m.**<br>Courtroom: **9D**<br><br>**Hon. George H. Wu** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on December 12, 2024, at 8:30 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 350

**MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR AN ORDER TREATING SPECIFIED ULTIMATE FACTS AS ESTABLISHED**

i

West 1st Street, Los Angeles, CA 90012, Defendant ULISES PIZANO-DIAZ ("Diaz" or "Defendant") will and hereby does move the Court, pursuant to Fed. R. Civ. P. 56, for a Summary Judgment, or in the Alternative, for an Order Treating Specified Facts as Established.  Pursuant to Local Rule 7-3, counsel for Plaintiff discussed the subject matter of this Motion with Defendants' counsel via the telephone on October 4, 2024.

    This Motion is based upon this Notice of Motion and Motion, the Memorandum in Support, the Declaration of Kevin M. Welch in support thereof, all pleadings and papers filed in this action, and upon other matters as may be presented to the Court at the time of the hearing.


Dated: November 14, 2024                Respectfully Submitted,




                        By:   /s/Kevin M Welch/

                        Kevin M. Welch (SBN 254565)
                        LAW OFFICE OF KEVIN M. WELCH
                        Kevin@kmwlawoffice.com
                        P.O. Box 494
                        Hermosa Beach, CA 90254
                        Tel.: (310) 929-0553

                        Attorney for Defendant,
                        ULISES PIZANO-DIAZ


**MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR AN ORDER TREATING SPECIFIED ULTIMATE FACTS AS ESTABLISHED**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION AND STATEMENT OF FACTS

This case is about lawyers fighting over the right to use the word "fighter" in their commercial advertising. More specifically, Plaintiff Yagoubzadeh Law Firm, LLP ("Yagoubzadeh" or "Plaintiff") is attempting to prevent Defendant Ulises Pizano-Diaz ("Diaz" or "Defendant"), and presumably all other lawyers, from using the word "LUCHADOR," which is Spanish for "FIGHTER," in commercial advertising for *legal services*.

The basis for Plaintiff's claim is Plaintiff's ownership of the federally registered trademark "1-800-LUCHADOR," reg. no. 6920485 (Plaintiff's Registration"). Plaintiff believes that Plaintiff's Registration entitles Plaintiff to shut down all other LUCHADOR-formative trademarks in the field of *legal services*.

Defendant Diaz is seeking to continue using and to federally register his three LUCHADOR-formative trademarks, specifically: 1) ABOGADOR LUCHADOR; 2) LUCHADOR LAWYER; and 3) the following stylized logo:



The 1979 *Sleekcraft* eight factors remain the test for infringement in the Ninth Circuit, which include such factors as: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks;(4) evidence of actual confusion;(5) marketing channels used;(6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. Not all factors are relevant in all cases. Defendant believes the relevant factors in this dispute are (1) strength of the

mark; (3) similarity of the marks; and (3) similarity of the marks.  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 204 U.S.P.Q. 808 (9th Cir. 1979).

It is Defendant's position that, for the purpose of this analysis, Plaintiff's mark should be treated as if it is "1-800-FIGHTER" because, pursuant to the Doctrine of Foreign Equivalents, the proper procedure for determining the genericness, descriptiveness, as well as similarity of meaning and connotation of a foreign word from a well-known foreign language such as Spanish is to first translate the foreign word into English, and, as previously mentioned, the English translation of the Spanish word "LUCHADOR" is "FIGHTER."

It is Defendant's further position that the word "FIGHTER" is so highly descriptive of "*legal services*" that Plaintiff's mark cannot be inherently distinctive and therefore should either be cancelled entirely for lack of acquired distinctiveness, or in the alternative, be given only the most narrow breadth of protection, essentially only preventing third parties from using the identical or near-identical mark.

Defendant's position is supported by case law as it is well established that "*[i]f an applicant applies to register a designation that consists of a merely descriptive term with numerals in the form of an alphanumeric telephone number (e.g., 800, 888, or 900 followed by a word), the examining attorney should refuse registration under §2(e)(1)*."  See *In re Page*, 51 USPQ2d 1660 (TTAB 1999) (888 PATENTS merely descriptive of patent-related legal services); TMEP §1209.03(l).

And even if the Court finds that Plaintiff can show the requisite amount of acquired distinctiveness to remain registered, it is also well established that highly descriptive terms are only afforded a very narrow breadth of protection.

The predecessor of the Federal Circuit observed in the early years of the Lanham Act that the merchant who chooses as a mark a term that is descriptive and has not achieved a strong presence in the marketplace cannot be surprised that the

mark has only a limited scope of protection. Affirming dismissal of an opposition by SURE-FIT against the registration of RITE-FIT, both for furniture slip-covers, the court noted that opposer's mark was descriptive and inherently weak and thus entitled to narrower protection than a strong mark:

*"It seems both logical and obvious to us that where a party chooses a trademark which is inherently weak, he will not enjoy the wide latitude of protection afforded the owners of strong trademarks. Where a party uses a weak mark, his competitors may come closer to his mark than would be the case with a strong mark without violating his rights. The essence of all we have said is that in the former case there is not the possibility of confusion that exists in the latter case."*

*Sure-Fit Products Co. v. Saltzson Drapery Co.*, 45 C.C.P.A. 856, 254 F.2d 158, 160, 117 U.S.P.Q. 295 (1958) (Quoted with approval in *In re Hartz Hotel Services Inc.*, 102 U.S.P.Q.2d 1150, 1154, 2012 WL 1193704 (T.T.A.B. 2012)).

The Supreme Court has also remarked on "the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122, 125 S. Ct. 542, 160 L. Ed. 2d 440, 72 U.S.P.Q.2d 1833 (2004).

What's more, it is Defendant's still further position that Plaintiff's trademark is only entitled to narrow protection because it is also a member of a "crowded field." In trademark law, when a particular word or term is used frequently in trademarks associated with a particular field of goods or services, the field is said to be "crowded" with respect to that particular word or term and each trademark that contains the common word or term is considered relatively "weak" in its ability to prevent use by others in the crowd.

For example, the Trademark Board reversed an *ex parte* refusal to register GRAND HOTELS NYC based on a likelihood of confusion with a registration for GRAND HOTEL. Applicant submitted evidence of five registrations of variations on GRAND HOTEL (such as ANCORAGE GRAND HOTEL), five additional

uses of variations on GRAND HOTEL (such as KYOTO GRAND HOTEL AND GARDENS in Los Angeles), and website advertising of ten other GRAND hotels (such as MGM GRAND HOTEL & CASINO in Las Vegas). The Board concluded that because "grand" was a highly suggestive term for a hotel and the proliferation of variations on GRAND for hotels, the mark GRAND HOTEL was entitled to only a very narrow scope of protection: "[W]e conclude that consumers are able to distinguish between different GRAND HOTEL marks based on small differences in the marks, including the addition of a geographic term." *In re Hartz Hotel Services Inc.*, 102 U.S.P.Q.2d 1150, 2012 WL 1193704 (T.T.A.B. 2012) ("[W]e find that the addition of NYC to applicant's mark is sufficient to render applicant's mark distinguishable from the mark in the cited registration.").

Similarly, in the instant case, there are over 50 federally registered trademarks in the field of *legal services* that include the word "FIGHTER" or "FIGHT," (Decl. of Welch) and the use of the terms at common law is ubiquitously intertwined with the advertisement of legal services. (Dec. Welch).

And finally, when comparing Defendant's LUCHADOR-formative marks Plaintiff's Registration, the Anti-Dissection Rule instructs that the marks should be considered in their entirety as a consumer would encounter the respective marks, rather than overly focusing of the overlapping word or term.

Defendant respectfully submits that given the fact that the overlapping term in the instant case, "LUCHADOR", is both highly descriptive and a member of a crowded field with respect to *legal services,* and for both reasons should be afforded only the most narrow breadth of protection, and given the fact each of Defendant's trademarks contain elements that are not present in Plaintiff's Registration, if Defendants marks are considered in their entirety as instructed by the Anti-Dissection Rule instructs, Defendant's trademark present no likelihood of confusion in with respect to Plaintiff Registration.

## II. STATEMENT OF LAW

### a. <u>Summary Judgment</u>

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ.P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Id. at 248. No genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

It is not enough for a party opposing summary judgment to "rest on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 259. Instead, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 325. The "mere existence of a scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. *Anderson*, 477 U.S. at 252.

## III.  ARGUMENT

### a. <u>The Doctrine of Foreign Equivalents</u>

As previously stated, The Doctrine of Foreign Equivalents states that the proper procedure for determining the genericness, descriptiveness, as well as similarity of meaning and connotation of a foreign word from a well-known foreign language such as Spanish is to first translate the foreign word into English.

*In re Northern Paper Mills*, 20 C.C.P.A. 1109, 64 F.2d 998, 17 U.S.P.Q. 492 (1933) ("[A] word taken from a well-known foreign modern language, which is, itself, descriptive of a product, will be so considered when it is attempted to be registered as a trade-mark in the United States for the same product."); *In re New Yorker Cheese Company*, 130 U.S.P.Q. 120, 1961 WL 7953 (T.T.A.B. 1961) ("[I]t is well settled that no registerable distinction can be drawn between a descriptive English word and a foreign equivalent thereof."); *Bart Schwartz Intern. Textiles, Ltd. v. F.T.C.*, 48 C.C.P.A. 933, 289 F.2d 665, 129 U.S.P.Q. 258 (1961) ("[T]he general rule [is] that a descriptive word in a foreign language cannot be registered in the United States as a trademark for the described product."); *Volkswagenwerk Aktiengesellschaft v. Church*, 256 F. Supp. 626, 629, 150 U.S.P.Q. 338 (S.D. Cal. 1966), judgment aff'd, 411 F.2d 350, 161 U.S.P.Q. 769 (9th Cir. 1969), opinion supplemented, 413 F.2d 1126 (9th Cir. 1969) ("And in California … foreign words are translated into their English equivalents before making the determination of whether the term is descriptive." VOLKSWAGEN is descriptive, but has secondary meaning.).

This rule is also reflected in the Restatement Third, Unfair Competition § 14, comment a (1995) ("The multilingual character of the purchasing public and the increasing exposure to foreign terms on imported goods justify general adherence to the 'doctrine of foreign equivalents,' under which the descriptiveness of a foreign word is determined according to its English translation.")

In the instant case, the foreign word is the Spanish "LUCHADOR" which when translated into English is "FIGHTER." (See Decl. of Welch).

As such, Defendant respectfully submits that for the purpose of this analysis Plaintiff's Registration should be considered "1-800-FIGHTER."

### b. <u>The Term "FIGHTER" is Highly Descriptive of Legal Services</u>

A "descriptive" term is one that directly and immediately conveys some

knowledge of the characteristics of a product or service. *In re North Carolina Lottery*, 866 F.3d 1363, 1367, 123 U.S.P.Q.2d 1707 (Fed. Cir. 2017) ("A mark is merely descriptive if it immediately conveys information concerning a feature, quality, or characteristic of the goods or services for which registration is sought.").

A mark is "descriptive" if it is descriptive of a desirable characteristic of the goods or services. *Devcon Corp. v. Woodhill Chemical Sales Corp.*, 455 F.2d 830, 172 U.S.P.Q. 417, 173 U.S.P.Q. 257 (1st Cir. 1972), cert. denied, 409 U.S. 845, 34 L. Ed. 2d 85, 93 S. Ct. 48, 175 U.S.P.Q. 385 (1972) (5-MINUTE glue which sets in five minutes); *Educational Dev. Corp. v. Economy Co.*, 562 F.2d 26, 195 U.S.P.Q. 482 (10th Cir. 1977) (can be descriptive without conveying all of product's characteristics if it describes one crucial aspect: CONTINUOUS PROGRESS descriptive of educational materials); *In re Westbrae Natural Foods, Inc.*, 211 U.S.P.Q. 642 (T.T.A.B. 1981) (term held descriptive of flavor of food ingredient).

The Supreme Court has made the following remarks regarding those who attain trademark rights in descriptive terms by achieving a secondary meaning:

"*The common law's tolerance of a certain degree of confusion on the part of consumers followed from the very fact that in cases like this one an originally descriptive term was selected to be used as a mark, not to mention the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first … . The Lanham Act adopts a similar leniency, there being no indication that the statute was meant to deprive commercial speakers of the ordinary utility of descriptive words.*"

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122, 125 S. Ct. 542, 550, 160 L. Ed. 2d 440, 72 U.S.P.Q.2d 1833 (2004).

In the instant case, the goods and services are *legal services* which most often involve an advocate "fighting" for a client's rights or desired outcome; therefore, the word "FIGHTER" directly conveys a quality of the services and

should be considered descriptive with respect to *legal services*.

### c. <u>Trademarks that Include the Terms "FIGHTER" or "FIGHT" in Conjunction with "*Legal Services*" are Members of a Crowded Field</u>

In a "crowded" field of look-alike marks, each member of the crowd is relatively "weak" in its ability to prevent use by others in the crowd. If the common element of conflicting marks is a word that is "weak" then this reduces the likelihood of confusion. A portion of a mark may be "weak" in the sense that such portion is descriptive, highly suggestive, <u>or is in common use by many other sellers in the market</u>. *See Colgate-Palmolive Co. v. Carter-Wallace, Inc.*, 432 F.2d 1400, 167 U.S.P.Q. 529 (C.C.P.A. 1970); *Knapp-Monarch Co. v. Poloron Products, Inc.*, 134 U.S.P.Q. 412 (T.T.A.B. 1962) (THERMEX—THERM-A-JUG: no likelihood of confusion, as common "THERM" is suggestive of heat-insulating)

For example, in a battle between two "Joe's" Restaurants the San Francisco Bay Area, the court noted that there were several "Joe's" in that area, such as "Joe's Coffee Shop," "Joe's Café," "Little Joe's Pizzeria," "Big Joe's Broiler," "Joe Joe's BBQ Café," "Joe's 24th Street Café," "Joe's Cable Car," "Marin Joe's," "San Rafael Joe's," and an "Original Joe's" in San Jose. The court denied a preliminary injunction in a suit brought by "Original Joe's" in San Francisco against "Uptown Joe's" also in San Francisco, noting that the mark "is not very strong in the marketplace." *Original Joe's Inc. v. Pinsonneault Holdings, LLC*, 93 U.S.P.Q.2d 1156, 2009 WL 4254434 (N.D. Cal. 2009).

In the instant case, there are over 50 federally registered trademarks in the field of *legal services* that include the word "FIGHTER" or "FIGHT," (Decl. of Welch) and the use of the terms at common law is ubiquitously intertwined with the advertisement of legal services. (Dec. Welch). Defendant respectfully submits that trademarks in the legal services field that include the term "FIGHTER" or

"FIGHT" are a crowded field and this should be afforded only a very narrow exclusivity.

**d.  <u>The Anti-Dissection Rule Demands that Defendants Marks are Compared as Whole and Not Merely Focusing of the Overlapping Term</u>**

Under the anti-dissection rule, a composite mark is tested for its validity and distinctiveness by looking at it as a whole, rather than dissecting it into its component parts.  As the U.S. Supreme Court stated: "The commercial impression of a trademark is derived from it as a whole, not from its elements separated and considered in detail. For this reason it should be considered in its entirety." ; *Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902, 35 U.S.P.Q.2d 1342, 1351 (9th Cir. 1995)* (Applying the rule that the validity of a composite must be "determined by viewing the trademark as a whole, as it appears in the marketplace" and not by dissection. The court held that while "Self-Realization" is a generic name for a type of yoga spiritual organization and descriptive of books and tapes sold by such an organization, the composites of "Self-Realization Fellowship" and "Self-Realization Fellowship Church" are not necessarily also invalid. The status of such composites must be separately determined by relevant evidence of usage.)

In the instant case, the Anti-Dissection Rule is relevant because after determining that the term "LUCHADOR" (or "FIGHTER") is both highly descriptive and a crowded field with respect to *legal services*, the rule instructs that the marks should be consider as a whole rather than overly focusing on the overlapping term.  In this case, while each mark includes the term LUCHADOR, each mark also contains other elements that are not present in the other marks that create different commercial impression when consider as a whole.

## VI. CONCLUSION

Having demonstrated that the strength of the marks is relatively weak because the overlapping term is both highly descriptive of *legal services* and a member of a crowded field with respect to *legal services*, and having demonstrated that the marks not highly similar when they are considered in their entirety as is instructed by the Anti-Dissection Rule, the only relevant *Sleek Craft* factor left to discuss is "the degree of care likely to be exercised by the purchaser." Defendant respectfully submits that this last factor favors a finding of no consumer confusion because *legal services* are purchased with a relatively high degree of care given their price, often personal nature, and importance.

Dated this 14th day of November 2024

By:/s/Kevin M Welch/

Kevin M. Welch (SBN 254565)

LAW OFFICE OF KEVIN M. WELCH
P.O. Box 494
Hermosa Beach, CA 90245
Tel.: (310) 929-0553
Email:Kevin@kmwlawoffice.com

*Attorney for Defendant,*
*Ulises Pizano-Diaz*