Omid E. Khalifeh, SBN 267340
Ariana Santoro, SBN 300767
Louise Jillian Paris, SBN 347801
**OMNI LEGAL GROUP**
10880 Wilshire Blvd., Ste. 1860
Los Angeles, California 90024
Phone:       310.276.6664
Facsimile:   310.305.1550
omid@omnilg.com
ariana@omnilg.com
jillian@omnilg.com

Attorneys for Plaintiff
YAGOUBZADEH LAW FIRM LLP

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAGOUBZADEH LAW FIRM LLP, a California Limited Liability Partnership;<br><br>Plaintiff,<br><br>vs.<br><br>ULISES PIZANO-DIAZ, an individual;<br><br>Defendant. | Case No.: 2:23-cv-08299<br><br>**Honorable George H. Wu**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORTIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Date: Friday, December 12, 2024**<br>**Time: 8:30 am**<br>**Place: First Street Courthouse**<br>**Courtroom 9D, 9th Floor**<br>**350 W. 1st Street**<br>**Los Angeles, California 90012** |

1

# TABLE OF CONTENTS

**I. INTRODUCTION………………………………………………..………..4**

**II. LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT..…5**

**IV. ARGUMENT……………………………………………………..………..6**

    **a. Genuine Issues of Material Fact Exists…………………………….6**

    **b. The Doctrine of Foreign Equivalents Does Not Undermine the Strength of Plaintiffs Mark………………………………………….7**

    **c. Plaintiff's Mark Is Not Part of a "Crowded Field"……………….10**

    **d. The Anti-Dissection Rule Precludes Defendant's Narrow Analysis…………………………………………………………..11**

    **e. Likelihood of Confusion Under the *Sleekcraft* Factors Precludes Summary Judgment…………………………………………………..12**

**V. CONCLUSION……………………………………...….………..………..15**

# TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986)……………….…..5

Estate of P.D. Beckwith, Inc. v. Comm'r of Patents, 252 U.S. 538, 545-46 (1920)……………………………………………………………………..….11

GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1206 (9th Cir. 2000)……….11

Johnson v. Barr, 79 F.4th 996 (9th Cir. 2023)…………………………………….5

San Pedro Hotel Co. v. City of Los Angeles, 159 F.3d 470, 480 (9th Cir. 1998)..5

Zobmondo Ent., LLC v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010)…..8

**Rules**

Fed. R. Civ. P. 56……………………………………………………………….....5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff Yagoubzadeh Law Firm LLP ("Yagoubzadeh LLP"), by its undersigned attorneys, files this memorandum in opposition to Defendant's Motion for Summary Judgment. Plaintiff contends that there are genuine issues of material fact that preclude the granting of summary judgment in favor of the Defendant. As such, summary judgment should be denied.

The Defendant's motion hinges on a strained and ultimately flawed argument that relies heavily on a false equivalence between the term "LUCHADOR" which carries a specific cultural and linguistic significance, and the generic term "Fighter." The Defendant's claim that "LUCHADOR" is descriptive of legal services oversimplifies the linguistic and cultural nuances of the term. While " LUCHADOR" can be translated as "fighter" in Spanish, the language offers multiple words for "fighter," each with distinct meanings depending on context. *See* Omid E. Khalifeh "OEK" Decl. ¶¶ 2, 7, Exhs. A-B, D. For instance, "peleador" is commonly used for physical combatants like boxers or MMA fighters, while "guerrero" evokes a warrior, often with historical or military connotations. "Combatiente" is a formal term for a combatant, typically used in professional or military contexts.

For legal advocacy, Spanish speakers would more naturally use terms like "defensor" (defender) or even "los defensores" and "batallador", which conveys persistence and struggle, especially in a metaphorical sense. *Id.* ¶ 6, Exh. C. These terms better describe a lawyer's role than "LUCHADOR," which is not commonly used in legal contexts.

Moreover, "LUCHADOR" carries a culturally specific meaning tied to the tradition of Lucha Libre, Mexico's iconic form of wrestling. A "LUCHADOR" is far more than just a generic fighter; it is a performer known for wearing colorful masks, engaging in stylized combat, and embodying theatrical resilience and

heroism. *Id.* ¶5, Exh. B. Even when used metaphorically, "LUCHADOR" typically invokes this wrestling imagery, not the broader concept of advocacy or fighting for justice. This cultural association makes "LUCHADOR" distinctive and evocative, not descriptive.

Finally, a descriptive trademark must directly convey an immediate idea of the services offered, which "LUCHADOR" does not. The Plaintiff's use of the term aligns with its unique cultural significance, creating a brand that resonates with strength and resilience in a distinct and memorable way. In contrast, the Defendant's attempt to equate "LUCHADOR" with a generic fighter for justice undermines the linguistic and cultural realities of the word. For these reasons, "LUCHADOR" is not descriptive of legal services and should be protected as a distinctive trademark.

## II. <u>LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT</u>

Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law under Fed. R. Civ. P. 56. In making this determination, the court must view the evidence in the light most favorable to the non-moving party. *See Johnson v. Barr*, 79 F.4th 996 (9th Cir. 2023).

Plaintiff relies on established precedents supporting its opposition to summary judgment. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court held that summary judgment is improper if there is any evidence upon which a jury could reasonably find for the non-moving party (477 U.S. 242, 248-50 (1986)). Furthermore, the Ninth Circuit has consistently affirmed that summary judgment is inappropriate where there are disputed issues of material fact. *See San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 480 (9th Cir. 1998).

### III. ARGUMENT

#### a. Genuine Issues of Material Fact Exists

Defendant's Motion for Summary Judgment must be denied because genuine issues of material fact preclude judgment as a matter of law. Summary judgment is only appropriate when there is no dispute over any material fact, and the evidence, viewed in the light most favorable to the non-moving party, shows that the movant is entitled to judgment as a matter of law. Plaintiff has presented substantial evidence creating material disputes on key issues, including the strength of Plaintiff's mark, the similarity of the marks, the proximity of the services, and the likelihood of consumer confusion. These factual disputes must be resolved by a jury, not at the summary judgment stage.

The strength of Plaintiff's 1-800-LUCHADOR mark is a disputed fact that requires resolution at trial. Defendant claims that the mark is weak and descriptive, relying on the Doctrine of Foreign Equivalents. Plaintiff, however, has shown that the mark is suggestive, inherently distinctive, and has acquired significant secondary meaning through years of exclusive use, extensive marketing, and consumer recognition. Plaintiff's federal trademark registration and its long-standing reputation in the legal services industry, contradicts Defendant's assertions and establishes the mark's strength.

The similarity of the marks is also a material fact in dispute. Defendant's marks, including ABOGADO LUCHADOR and LUCHADOR LAWYER, prominently feature "LUCHADOR," which is the dominant and distinctive component of Plaintiff's 1-800-LUCHADOR mark. Consumers are likely to focus on the shared "LUCHADOR" element when forming impressions of the marks, leading to confusion. Defendant's attempt to argue that the addition of generic terms such as "ABOGADO" or "LAWYER" sufficiently distinguishes the marks ignores the overall commercial impression of the marks, which is a fact-intensive determination requiring resolution by the factfinder.

The proximity of the parties' services also raises genuine factual disputes. Plaintiff markets personal injury legal services under its 1-800-LUCHADOR mark, while Defendant seeks to use its marks to promote related legal services targeting the same consumer. Both parties operate in overlapping markets, advertising through similar channels such as online platforms and local media. These overlapping services and marketing channels increase the likelihood of confusion, and the extent to which consumers perceive the parties' services as related is a factual issue that cannot be resolved on summary judgment.

The likelihood of confusion between the marks is the central issue in this case and requires a fact-intensive analysis under the *Sleekcraft* factors. Plaintiff has raised material disputes regarding consumer confusion, overlapping marketing channels, and Defendant's intent to benefit from Plaintiff's goodwill. Defendant's assertions to the contrary highlight unresolved issues that must be evaluated by the trier of fact. Determining the likelihood of confusion involves credibility assessments and the weighing of facts, which are tasks reserved for the jury.

These genuine disputes of material fact preclude summary judgment. Defendant's motion improperly seeks to resolve these disputes in its favor, but the law mandates that all inferences be drawn in favor of Plaintiff as the non-moving party. Summary judgment is therefore inappropriate.

### b. The Doctrine of Foreign Equivalents Does Not Undermine the Strength of Plaintiffs Mark

Defendant argues that the Doctrine of Foreign Equivalents weakens Plaintiff's mark because "LUCHADOR" translates to "fighter" in English, which Defendant claims is descriptive of legal services. This argument mischaracterizes the mark's distinctiveness. While the Doctrine of Foreign Equivalents applies when assessing descriptiveness, it does not negate the inherent suggestiveness of Plaintiff's mark as a whole. Plaintiff's 1-800-LUCHADOR mark combines a suggestive term with a

distinctive alphanumeric element, creating a unique commercial impression in the legal services industry.

Descriptive terms directly convey characteristics of a product or service, whereas suggestive marks require imagination to connect the mark to its associated goods or services. See *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010). Here, "LUCHADOR" metaphorically conveys the idea of a performer known for wearing colorful masks, engaging in stylized combat, and embodying theatrical resilience and heroism, which aligns with Plaintiff's brand of legal advocacy. If "LUCHADOR" were as generic as Defendant claims, there would be no need for Defendant's own design mark to prominently feature the quintessential luchador iconography—a masked wrestler that embodies the theatrical and heroic qualities tied exclusively to this tradition. This design underscores the uniqueness of "LUCHADOR" in the minds of consumers, who are likely to associate it with specific cultural and symbolic meanings, not a generic fighting persona.

| Defendant's Trademark (TM Serial No. 98527171) |
|---|
|  |

By relying on this imagery in their own branding, Defendant inadvertently concedes the very point they seek to refute: that "LUCHADOR" is not interchangeable with "fighter." This undermines their argument of a "crowded field" and highlights the distinctive nature of Plaintiff's mark. The Defendant cannot credibly argue that the term is generic while simultaneously invoking its unique cultural identity to market their services. This contradiction is fatal to their motion and confirms that Plaintiff's mark deserves the robust protection afforded to distinctive trademarks.

The term "LUCHADOR" and the imagery that it conjures are uniquely tied to Lucha Libre, a culturally significant form of professional wrestling originating in Mexico. *See* OEK Decl. ¶ 5, Exh. B.  A " LUCHADOR" is not simply a fighter; it is a performer, often wearing a colorful mask, engaging in highly stylized combat that blends athleticism with storytelling. The mask itself is iconic, symbolizing identity, strength, and even mysticism.

Moreover, the term "LUCHADOR" is not descriptive of legal services, as the Defendant claims. The Spanish language offers numerous other words, such as "Defensor," "Combatiente," or "Batallador," that better align with the concept of legal advocacy or fighting for a cause. In contrast, "LUCHADOR" evokes the culturally specific image of a masked wrestler, tied to the rich tradition of Lucha Libre, making it distinctive and not merely descriptive.

When Spanish speakers hear the term "LUCHADOR," they are far more likely to imagine a masked wrestler leaping off the ropes in a wrestling ring than a lawyer fighting for justice in a courtroom. The Defendant's argument not only misrepresents the linguistic nuances of Spanish but also ignores the cultural significance of the term, in the attempt to redefine it as generic. For these reasons, we respectfully urge the Court to reject the Defendant's claim and affirm the distinctiveness of "Luchador" as a trademark for legal services.

### c. Plaintiff's Mark Is Not Part of a "Crowded Field"

Defendant asserts that the legal services market is saturated with trademarks containing "fighter" or "fight," thereby rendering Plaintiff's mark weak and entitled to narrow protection. While Defendant references a few trademarks containing the terms "fight" or "fighter," none prominently feature or utilize the term "LUCHADOR." The marks cited by Defendant differ significantly in overall impression and use, and the mere existence of trademarks with similar elements does not automatically weaken Plaintiff's mark or diminish its distinctiveness within the legal services market.

Defendant conflates these terms to argue that the field of legal services is "crowded" with trademarks involving "LUCHADOR" or its English equivalent, "fighter." This is a misrepresentation. The word "LUCHADOR" is not a mere synonym for "fighter"; it is a Spanish term intrinsically tied to the tradition and identity of lucha libre, a culturally significant form of professional wrestling with deep roots in Mexican heritage. *See* OEK Decl. ¶ 5, Exh. B. It carries unique connotations that go beyond the generic descriptor "fighter," which Defendant attempts to use as a catch-all to diminish the distinctiveness of Plaintiff's mark.

Defendant's argument about a "crowded field" is equally flawed. While the Defendant provides evidence of marks containing the word "fighter" in legal services, no evidence has been presented of marks involving "LUCHADOR" that create any marketplace overlap or likelihood of confusion with Plaintiff's mark. The Defendant's attempt to equate Plaintiff's federally registered trademark, "1-800-LUCHADOR," with unrelated uses of "fighter" marks grossly oversimplifies and mischaracterizes the issue. The commercial impression of "LUCHADOR" in legal services is fundamentally distinct, rooted in the imagery of an advocate who "fights" for clients' rights with the passion and vigor culturally associated with a luchador. Defendant's reliance on the Doctrine of Foreign Equivalents to collapse the distinction between "LUCHADOR" and "fighter" disregards the doctrine's

limitations, which recognize that not all foreign words have direct equivalences devoid of cultural or contextual significance.

Defendant's argument fails to acknowledge the unique commercial impression of "LUCHADOR" and improperly extrapolates the crowded nature of marks involving "fighter" to Plaintiff's distinct mark. This false equivalence is unsupported by evidence and is contrary to trademark principles that protect the distinctiveness of marks as they are understood in the relevant market context.

### d. The Anti-Dissection Rule Precludes Defendant's Narrow Analysis

Defendant improperly isolates the term "LUCHADOR" to argue that Plaintiff's and Defendant's marks are dissimilar. This approach contravenes the Anti-Dissection Rule, which requires that marks be analyzed in their entirety to assess their overall commercial impression. See *Estate of P.D. Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538, 545-46 (1920). When viewed as a whole, Plaintiff's 1-800-LUCHADOR mark combines the numeric prefix "1-800" with the term "LUCHADOR," creating a unique and distinctive commercial impression that sets it apart.

At the same time, courts have consistently held that dominant elements within a mark heavily influence consumer perception and likelihood of confusion. See *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). Defendant's marks, such as ABOGADO LUCHADOR and LUCHADOR LAWYER, prominently feature "LUCHADOR," the dominant and distinctive element of Plaintiff's mark. While the marks must be analyzed in their entirety, the shared dominant term "LUCHADOR" strongly contributes to the likelihood of confusion, particularly given the overlap in the parties' services and target consumers.

### e. Likelihood of Confusion Under the *Sleekcraft* Factors Precludes Summary Judgment

Defendant's claim that no likelihood of confusion exists between Plaintiff's 1-800-LUCHADOR mark and Defendant's marks is unpersuasive when analyzed under the *Sleekcraft* test. The Ninth Circuit applies this multifactor test to determine whether consumer confusion is likely, considering factors such as the strength of the mark, the similarity of the marks, the proximity of the services, and evidence of actual confusion, among others. Each relevant factor weighs strongly in favor of Plaintiff and underscores that genuine disputes of material fact preclude summary judgment.

The strength of Plaintiff's mark supports a finding of likely confusion. Plaintiff's 1-800-LUCHADOR mark is inherently distinctive and has acquired significant secondary meaning through its eleven plus years of exclusive use in marketing legal services. The mark combines the suggestive term "LUCHADOR," which metaphorically evokes the image of a culturally significant form of professional wrestling with deep roots in Mexican heritage. Defendant's argument that "LUCHADOR" is descriptive under the Doctrine of Foreign Equivalents fails to consider the mark's overall commercial impression, which is not merely descriptive but suggestive. Plaintiff's federal registration further establishes a presumption validity and distinctiveness that cannot be overcome by Defendant's meritless claims and this entitles Plaintiff to broad protection under trademark law.

The similarity of the marks also weighs heavily in Plaintiff's favor. Both Plaintiff's and Defendant's marks prominently feature "LUCHADOR," the dominant element, creating a similar commercial impression. While Defendant attempts to distinguish its marks by adding generic terms such as "ABOGADO" (Spanish for "lawyer") or "LAWYER," these additions do not sufficiently differentiate the marks. Courts focus on the dominant and distinctive components of marks when assessing similarity, as consumers are more likely to remember and rely

on these elements. Here, the shared use of "LUCHADOR" as the focal point of both parties' marks makes consumer confusion highly probable.

The proximity of the services offered by Plaintiff and Defendant further exacerbates the likelihood of confusion. Plaintiff uses the 1-800-LUCHADOR mark to market personal injury legal services, while Defendant seeks to use its marks in connection with legal services targeting a similar consumer base. Both parties advertise to individuals seeking legal representation, often through overlapping marketing channels such as online platforms and local advertisements. Courts have consistently held that related or complementary services increase the potential for confusion, particularly when they target the same audience. Defendant's assertion that the parties operate in distinct markets ignores the substantial overlap in their services and consumer base.

The potential for actual confusion further supports Plaintiff's claims. Consumers are likely to mistake Defendant's branding for Plaintiff's services due to the similarities in the marks, the overlapping marketing channels, and the proximity of the services offered. Courts recognize that the likelihood of confusion does not require direct evidence of actual confusion and may be inferred from the overall circumstances, particularly where the marks and services share key characteristics. This potential for misunderstanding highlights the inherent similarity of the marks and the risk of consumer confusion.

The shared marketing channels used by Plaintiff and Defendant amplify the likelihood of confusion. Both parties promote their services through digital platforms, social media, and online advertisements, making it highly likely that consumers will encounter the marks in similar contexts. The use of overlapping channels not only increases the potential for confusion but also undermines Defendant's claim that its branding operates in a distinct market. Courts often find that when parties use similar methods to reach the same audience, the likelihood of confusion is significantly heightened.

Defendant's argument that the degree of care exercised by legal services consumers mitigates confusion is unsupported. While some consumers may exercise care when selecting legal representation, even sophisticated consumers can be confused by similar branding, particularly when marks share dominant elements. Moreover, many legal services consumers are first-time clients who rely heavily on advertisements and branding when making decisions, making them more susceptible to confusion. The similarity of the marks, combined with the overlapping target audience, diminishes the degree of care argument.

Defendant's intent in selecting its marks further underscores the likelihood of confusion. Defendant adopted LUCHADOR-formative marks despite having knowledge of Plaintiff's prior use and federal registration. Defendant also ignored Plaintiff's cease-and-desist letter, continuing to promote its marks in direct competition with Plaintiff. Courts routinely infer bad faith where a junior user knowingly adopts a mark that is confusingly similar to an established senior mark. Defendant's actions demonstrate an intent to trade on Plaintiff's goodwill, further supporting a finding of likely confusion.

Reverse confusion is also a significant concern in this case. Reverse confusion occurs when a junior user's extensive marketing overshadows the senior user's mark, causing consumers to believe the senior user is affiliated with or subordinate to the junior user. Defendant's efforts to market its LUCHADOR-formative marks in the same industry risk overwhelming Plaintiff's established brand, diluting its distinctiveness and harming its goodwill. This type of confusion is particularly damaging to Plaintiff, as it undermines its ability to control its mark and its reputation in the legal services market.

When analyzed under the *Sleekcraft* factors, the evidence overwhelmingly supports a finding of likelihood of confusion. Defendant's attempt to minimize the similarity of the marks, the overlap in services, and the documented instances of confusion ignores critical facts and misapplies trademark law. These disputes are

inherently factual and must be resolved by a jury, making summary judgment inappropriate.

## IV. CONCLUSION

Defendant's Motion for Summary Judgment should be denied in its entirety. Plaintiff has demonstrated genuine disputes of material fact concerning the likelihood of confusion, the strength of Plaintiff's mark, Defendant's intent, and the proximity of the services. Defendant's arguments mischaracterize both the law and the facts, while the record clearly establishes the existence of a substantial controversy, including evidence of Defendant's trademark use. These unresolved issues must be determined by a jury at trial, and summary judgment is therefore inappropriate.

RESPECTFULLY SUBMITTED this 21st day of November, 2024.

**OMNI LEGAL GROUP**

/s/ Omid E. Khalifeh
Omid E. Khalifeh
Ariana Santoro
Louise Jillian Paris
Attorneys for Plaintiff,
Yagoubzadeh Law LLP