UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-8299-GW-MARx | Date | December 11, 2024 |
|---|---|---|---|
| Title | *Yagoubzadeh Law Firm LLP v. Ulises Pizano-Diaz* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR AN ORDER TREATING SPECIFIED ULTIMATE FACTS AS ESTABLISHED [32]

Attached hereto is the Court's Tentative Ruling on Defendant's Motion [32] set for hearing on December 12, 2024 at 8:30 a.m.

| | : |
|---|---|
| Initials of Preparer | JG |

<u>*Yagoubzadeh Law Firm LLP v. Diaz*</u>; Case No. 2:23-cv-08299-GW-(MARx)
Tentative ruling on Motion for Summary Judgment

I. **Background**

On October 3, 2023, Yagoubzadeh Law Firm LLP ("Plaintiff") filed a lawsuit against Ulises Pizano-Diaz ("Defendant"), alleging (1) federal trademark infringement under 15 U.S.C. § 1114, (2) unfair competition under 15 U.S.C. § 1125(a), and (3) unfair competition under Cal. Bus. & Prof. Code § 17200. *See* Complaint, Docket No. 1. Before the Court is Defendant's Motion for Summary Judgment ("MSJ"). *See* MSJ, Docket No. 32. The Court has considered the MSJ, Plaintiff's opposition brief ("Opp.," Docket No. 36), and Defendant's reply brief ("Reply," Docket No. 37).[1] In particular, the Court has examined: (1) Defendant's Statement of Uncontroverted Facts in Support of its Motion for Summary Judgment, Docket No. 33; (2) Plaintiff's Statement of Genuine Issues of Material Fact in Dispute in Support of Opposition to Motion for Summary Judgment ("PSUF"), Docket No. 36-1; and (3) Defendant's Statement of Uncontroverted Facts in Support of Defendant's Reply ("SUF"), Docket No. 37-18. Those submissions reveal the following.

Plaintiff, a personal injury law firm based in Beverly Hills, California, is the owner of a federal trademark registration issued on December 13, 2022, by the United States Patent and Trademark Office ("USPTO") for the mark "1-800-LUCHADOR," Reg. No. 6920485, in regards to "legal services in international class 045."[2] *See* SUF ¶¶ 2-3. Defendant (who according to paragraph 10 of the Complaint "is an individual, residing . . . [in] Carmichael, California") is a "purveyor of legal services." *Id.* ¶ 9. Defendant has filed trademark applications with the USPTO for three marks, "ABOGADO LUCHADOR" (Serial No. 97545146), "LUCHADOR LAWYER" (Serial No. 97545175), and "LL LUCHADOR LAW" (Serial No. 97898575) in conjunction with legal services in international class 045, and he has been using these marks in relation to the legal services Luchador Law provides. *Id*. ¶¶ 9-15; *see* stylized logo below and Exhibits B and C to

---

[1] The Court will consider the Reply brief, though notes that it was filed belatedly, in breach of the Local Rules. *See* C.D. Cal. L.R. 7-10.

[2] Attached as Exhibit A to the Complaint is a copy of the Certificate of Registration for Plaintiff's federally registered trademark "1-800-LUCHADOR," Reg. No. 6920486 ("Certificate of Registration"). *See* Docket No. 1-1. Pursuant to Fed. R. Evid. 201(b)(2), USPTO certificates of registration are proper subjects of judicial notice. *See Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 641 n.3 (9th Cir. 1993).

1

Complaint, Docket No. 1-1.



The parties dispute whether "[t]he word 'LUCHADOR' is a Spanish word that translates to the English word 'FIGHTER,'" and whether "[t]he word 'FIGHTER' is highly descriptive of '*legal services*.'" *See* SUF ¶¶ 5-6.

II. **Legal Standard**

Summary judgment is proper when a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To satisfy its burden at summary judgment, the moving party must establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, "the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[, but instead] must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal citations and quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997). And "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

At the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence. *See id.* at 255. A court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment should be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d

794, 798-99 (9th Cir. 2010).

Ninth Circuit caselaw cautions against summary judgment in trademark infringement cases. *See, e.g.*, *Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999) ("Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena."); *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001) ("[T]he question of likelihood of confusion is routinely submitted for jury determination as a question of fact."). Summary judgment is appropriate, however, "where a court can conclude that the consumer confusion alleged by the trademark holder is highly unlikely by simply reviewing the product listing/advertisement at issue." *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 939 (9th Cir. 2015). For Plaintiff's trademark infringement claims to prevail, it "must show sufficient evidence to permit a rational trier of fact to find that confusion is 'probable,' not merely 'possible.'" *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1085 (9th Cir. 2005).

**III.   Discussion**

"To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a [plaintiff] 'must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (citing *Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)). Defendant seeks to undermine both elements. He moves for summary judgment on Plaintiff's trademark infringement and unfair competition claims, arguing (1) that Plaintiff's mark should be cancelled entirely for lack of distinctiveness; or, in the alternative, (2) that Plaintiff has failed to establish evidence that the marks are confusingly similar. MSJ at 4.

The fact that a trademark has been registered by the USPTO creates a rebuttable presumption as to its validity. *Talking Rain Beverage Co. Inc. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003). "[A] registered mark is presumptively valid and therefore distinctive and non-functional, and the burden is on the [challenger] to prove otherwise." *OTR Wheel Eng'g, Inc. v. West Worldwide Servs.*, 897 F.3d 1008, 1022 (9th Cir. 2018); *see also Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 782 (9th Cir. 778).

**A. Trademark Cancellation**

Defendant first argues that Plaintiff's mark should be cancelled because it fails to meet the

3

distinctiveness requirement under the Lanham Act. *See* 15 U.S.C.A. § 1051.

As an initial matter, this Court has the power to cancel registrations in infringement litigation, even if a Defendant fails to file a counterclaim requesting cancellation. *See B & B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 155 (2015) ("[D]istrict courts can cancel registrations during infringement litigation, just as they can adjudicate infringement in suits seeking judicial review of registration decisions."); *see also* § 30:109. Federal court power: cancellation of registrations, 4 McCarthy on Trademarks and Unfair Competition § 30:109 (5th ed.) ("If a party fails to include a counterclaim for cancellation and prevails on the underlying trademark issues, the trial court has the discretion to either amend the judgment to include cancellation or to refuse to do so, leaving the USPTO to deal with the res judicata impact of the case in a cancellation proceeding.").

Defendant argues that under the doctrine of foreign equivalents, Plaintiff's trademark should be considered "1-800-FIGHTER" and not "1-800-LUCHADOR" for the purposes of the analysis. MSJ at 2. He argues further that "fighter" is highly descriptive of legal services and thus lacks distinctiveness and fails to meet the requirements of the Lanham Act. *Id.* While Plaintiff admits that "fighter" is one literal translation of "luchador," Plaintiff argues that the term "luchador" is not nearly as generic as Defendant claims; the word conjures imagery "uniquely tied to Lucha Libre, a culturally significant form of professional wrestling originating in Mexico [in which] a performer, often wearing a colorful mask, [symbolizing identity, strength, and even mysticism,] engag[es] in highly stylized combat that blends athleticism with storytelling."[3] Opp. at 8-9.

Generally, under the doctrine of foreign equivalents, "a word commonly used in another language as the generic name of a product cannot be imported into the United States and be transformed into a valid trademark." § 12:41. Doctrine of foreign equivalents, 2 McCarthy on Trademarks and Unfair Competition § 12:41 (5th ed.); *see In Re Sambado & Son Inc.*, 45 U.S.P.Q.2d 1312 (T.T.A.B. 1997) (holding that FRUTTA FRESCA is the equivalent of the generic

---

[3] While in its PSUF, Plaintiff says Defendant's claim that "the word 'LUCHADOR' is a Spanish word that translates to the English word 'FIGHTER'" is undisputed, Plaintiff spends a substantial portion of its motion disputing whether FIGHTER is truly the proper translation. The Court will thus treat the issue as disputed.

Furthermore, while not in any sense dispositive, the Court does note Exhibit C to the Complaint which is purportedly one of Defendant's advertisements which includes the alleged infringing mark LUCHADOR LAW. Docket No. 1-1 at 24 of 89. That advertisement also depicts individuals wearing what appears to be masks associated with Lucha Libre wrestlers.

term "fresh fruit" and is not registerable for fresh fruits). But in some cases, it is "difficult to accurately translate a non-English word into English and determine if the meaning is a generic name or is descriptive of the goods or services." § 12:41. Doctrine of foreign equivalents, 2 McCarthy on Trademarks and Unfair Competition § 12:41 (5th ed.); *see In re Pan Tex Hotel Corporation*, 190 U.S.P.Q. 109 (T.T.A.B. 1976) (finding that "LA POSADA… carries the added implication of a home or dwelling, and thus has a connotative flavor which is slightly different from that of [its direct translation,] 'the inn'"); *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 443 (5th Cir. 2000) ("The act of translation, of course, can itself be an imprecise task, as foreign words sometimes have no exact equivalent in English...").

As both Plaintiff and Defendant have presented exhibits with different dictionary definitions of "luchador," and the Plaintiff has argued that Defendant "misrepresents the linguistic nuances of Spanish [and] also ignores the cultural significance of the term," the Court would find that the proper translation of the term is a genuinely at issue. *Compare* Docket No. 32-3 (where Cambridge Dictionary, Microsoft Bing, and Google translate "LUCHADOR" as "FIGHTER") *with* Docket No. 36-3 (where Google translates "luchador" as "wrestler" and a Google AI result for "what is a luchador" states that "[a] luchador is a wrestler in the Mexican style of professional wrestling, known as lucha libre.").[4] Whether the term has a connotative flavor different from its direct translation is an issue of fact, and it is material in its influence on the determination of whether "1-800-LUCHADOR" meets the distinctiveness requirement under the Lanham Act.[5] As such, the issue is unsuitable for resolution at summary judgment. That being the case, the Court will not award Defendant summary judgment on the cancellation of Plaintiff's mark.

### B. Likelihood of Confusion

Defendant next argues that Plaintiff has failed to establish evidence that the marks are confusingly similar.

The Court will analyze Plaintiff's Lanham Act claim as well as its unfair competition

---

[4] Although Plaintiff's federal trademark application with the USPTO states that "[t]he English translation of luchador in the mark is fighter," this statement need not define Plaintiff's litigation position and is not dispositive. *See* Reply at 3; Second Declaration of Kevin M. Welch, Exhibit B.

[5] Because of the material factual dispute regarding the proper definition of "luchador," the Court has no reason to consider the question of whether "fighter" is highly descriptive of legal services, which is also disputed. *See* Statement of Genuine Issues of Material Fact in Dispute in Support of Opposition to Motion for Summary Judgment, Docket No. 36-1.

claims under the same standard because they are based on the same trademark infringing conduct. *See New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical[:] is there a 'likelihood of confusion?'"); *Empire TM Holdings, LLC v. Lohre*, No. 8:22-cv-00135-MEMF-(ADSx), 2022 WL 18674587, at *5 (C.D. Cal. May 24, 2022) ("Courts apply the same analysis to claims of trademark infringement, false advertising, and unfair competition when based on the same conduct." (collecting cases)).

Likelihood of confusion exists whenever "consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Nutri/Sys, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987) (citation omitted). Whether a mark is confusingly similar is determined by the eight-factor "likelihood of confusion" test from the Ninth Circuit's decision in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). The eight factors are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Sleekcraft*, 599 F.2d at 348-49.

These factors "are intended as an adaptable proxy for consumer confusion, not a rote checklist." *Network Automation*, 638 F.3d at 1145. "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific… [but] some factors—such as the similarity of the marks and whether the two companies are direct competitors—will always be important." *Brookfield Commc'ns Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). "The ultimate question of likelihood of confusion 'is predominantly factual in nature,' as is each factor within the *Sleekcraft* likelihood of confusion test." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002) (quoting *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 812 (9th Cir. 1997)).

While Defendant posits that only three of the eight *Sleekcraft* factors are relevant in this case ((1) strength of the mark, (3) similarity of the mark, and (6) type of goods and the degree of care likely to be exercised by the purchaser), Plaintiff submits that in addition to those three factors, three other factors are also relevant ((2) proximity of the goods, (5) marketing channels used, and (7) defendant's intent in selecting the mark). The Court will consider all of the factors, giving

6

each its due weight based on its relevance to the case at hand.[6]

1. <u>Strength of the Mark</u>

"The stronger a mark – meaning the more likely it is to be remembered and associated in the public mind with the mark's owner – the greater the protection it is accorded by the trademark laws." *Network Automation*, 638 F.3d at 1149 (citing *Brookfield Commc'ns*, 174 F.3d at 1058). In analyzing the strength of a mark, the Court weighs both conceptual strength and commercial strength. *Id.* "Marks can be conceptually classified along a spectrum of generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful." *Brookfield Commc'ns*, 174 F.3d at 1058. "Arbitrary or fanciful marks (i.e., *Kodak*) are called 'strong' marks, whereas descriptive or suggestive marks are 'weak.'" *Nutri/Sys.*, 809 F.2d at 605. A descriptive mark is one that "specifically describes a characteristic or ingredient of an article or service." *Id.* "Commercial strength is based on actual marketplace recognition, and thus advertising expenditures can transform a suggestive mark into a strong mark." *Network Automation*, 638 F.3d at 1149 (internal quotation marks omitted). In a "crowded field of similar marks, each member of the crowd is relatively weak in its ability to prevent use by others in the crowd… [meaning that] a mark which is hemmed in on all sides by similar marks on similar goods cannot be very distinctive… [because in] such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other." *Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988) (internal citations and quotation marks omitted).

The arguments of the parties on this point derive from the proper translation of the word "luchador." For that reason, as above, there is a genuine issue of material fact that results in the parties arguing past each other. Defendant argues that Plaintiff's mark is relatively weak because the term "fighter" is highly descriptive of legal services, as such services often involve an advocate fighting for the rights of their client, and it is a member of a crowded field, as there are "over 50

---

[6] In his Reply, Defendant points to the recent conclusion of the USPTO that, in regard to Defendant's three proposed marks, "[t]he trademark examining attorney has searched the USPTO database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d). 15 U.S.C. §1052(d); TMEP §704.02." Reply at 4. The Court notes that the examining attorney's conclusion is not dispositive, and, in any case, Defendant has not given the Court reason to depart from the general rule that a party may not raise new arguments in its Reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("[A] district court need not consider arguments raised for the first time in a reply brief."); *Ruiz v. Fernandez*, 949 F. Supp. 2d 1055, 1063 (E.D. Wash. 2013) (citing *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir.1999)) ("[A] party may not raise new legal issues for the first time in its reply brief.").

federally registered trademarks in the field of *legal services* that include the word 'FIGHTER' or 'FIGHT.'" MSJ at 7-8 (emphasis in original). Plaintiff argues that "luchador" is not properly translated simply as fighter and is thus neither descriptive of legal services nor a member of a crowded field. Opp. at 9.

On this factor, the proper translation of "luchador" has a significant impact on whether the mark is simply descriptive and whether it exists in a crowded field. Because that is disputed, *supra*, the Court cannot determine at this time whether this factor favors the Plaintiff or the Defendant. However, because of the presumption of validity as to a registered trademark, the Court would hold that Defendant has not overcome that presumption for purposes of the first factor.

2. Proximity of Goods

Goods are proximate if consumers are "likely to associate" the two product lines. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 633 (9th Cir. 2005) (citation omitted). "The proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." *Network Automation*, 638 F.3d at 1150 (citing *Sleekcraft*, 599 F.2d at 350). Courts also "consider whether the buying public could reasonably conclude that the products came from the same source." *Id.* The Ninth Circuit has found that goods as dissimilar as movies and sci-fi merchandise are proximate goods. *Dreamwerks Prod. Group Inc. v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998); *see also Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 159-60 (9th Cir. 1963) (whiskey and beer are proximate goods).

Plaintiff argues that both parties use their marks to promote personal injury legal services, targeting overlapping markets and thus the same consumers. Opp. at 13. It argues further that because the firms advertise through similar channels, the likelihood of confusion increases. *Id.* Defendant fails to respond to any of these arguments in its Reply. The Court finds that this factor points toward an increase in the likelihood of confusion.

3. Similarity of the Marks

The similarity of the marks "has always been considered a critical question in the likelihood-of-confusion analysis." *GoTo.com., Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). "[T]he more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion." *Brookfield Commc'ns*, 174 F.3d at 1054. When comparing the two

8

marks, courts follow three guiding principles: (1) "the marks must be considered in their entirety and as they appear in the marketplace;" (2) "similarity is adjudged in terms of appearance, sound, and meaning;" and (3) "similarities are weighed more heavily than differences." *GoTo.com*, 202 F.3d at 1206 (citations omitted).

Defendant argues that while ABOGADO LUCHADOR, LUCHADOR LAWYER, and LL LUCHADOR LAW all contain the term LUCHADOR, they also contain other words not present in Plaintiff's mark, leading each to "create [a] different commercial impression when consider[ed] as a whole." MSJ at 9. Plaintiffs argue that "[c]onsumers are likely to focus on the shared 'LUCHADOR' element when forming impressions of the marks" and that "the addition of generic terms such as 'ABOGADO' or 'LAWYER'" have little impact on how consumers understand the marks. Opp. at 6.

The Court finds that the differences between the marks are not particularly significant, especially considering that "LUCHADOR" is the dominant part in all marks and that the Court must weigh similarities more heavily than differences. *See GoTo.com*, 202 F.3d at 1206. Furthermore, while the final mark includes a design element that Plaintiff's does not, the mask design is immediately associated with the term "luchador." As a result, this factor points toward consumer confusion.

4. Evidence of Actual Confusion

"[E]vidence of actual confusion, at least on the part of an appreciable portion of the actual consuming public, constitutes strong support for a 'likelihood of confusion' finding." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012). "To constitute trademark infringement, use of a mark must be likely to confuse an appreciable number of people as to the source of the product." *Entrepreneur Media*, 279 F.3d at 115; *see also Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 874 (9th Cir. 2002) (a trademark plaintiff must put forth "persuasive evidence that a significant number of consumers have formed a similar mental association" to demonstrate actual confusion). However, "[t]he failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." *Brookfield Commc'ns*, 174 F.3d at 1050.

Neither side has presented evidence on this point, but, as the absence of evidence of actual confusion is not particularly noteworthy, the Court would find that this factor has minimal impact

9

on its analysis of the likelihood of consumer confusion.

    5.  <u>Marketing Channels Used</u>

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. The *Sleekcraft* court considered the locations where the goods were sold, the price range of the goods, and the types of advertising used. *Id.* "In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014).

Plaintiff argues that "[b]oth parties promote their services through digital platforms, social media, and online advertisements," which substantially increases the chance that consumers will be confused. Opp. at 13. Defendant offers no response in his Reply.

Given the ubiquitous use of the internet, to the extent that both parties advertised on the internet, such marketing is not afforded much weight. *See Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004) ("Given the broad use of the Internet today, the same could be said for countless companies. Thus, this factor merits little weight."). Thus, while there may be an overlap in advertising channels, this contributes only marginally to an increase in the likelihood of consumer confusion.[7]

    6.  <u>Types of Goods and Degree of Care Likely to be Exercised by Purchaser</u>

"Confusion is less likely where buyers exercise care and precision in their purchases, such as for expensive or sophisticated items." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006). When evaluating the degree of consumer care, courts consider "the typical buyer exercising ordinary caution." *Id.* (quoting *Sleekcraft*, 599 F.2d at 353).

Defendant argues that legal services are "purchased with a relatively high degree of care given their price, often personal nature, and importance." MSJ at 10. Plaintiff responds that "many legal services consumers are first-time clients who rely heavily on advertisements and branding when making decisions" and that "even sophisticated consumers can be confused by similar branding." Opp. at 14.

The Court finds merit in the arguments of both sides and thus views this factor as neutral as to the likelihood of consumer confusion.

---

[7] Neither side appears to mention the impact, if any, on the geographic locations of the law practices.

7. Defendants' Intent in Selecting the Mark

The Ninth Circuit has previously "emphasized the minimal importance of the intent factor." *GoTo.com*, 202 F.3d at 1208 (citing *Brookfield Commc'ns*, 174 F.3d at 1059). Nonetheless, where "one party knowingly adopts a mark similar to another's . . . courts presume that the defendant will accomplish its purpose, and that the public will be deceived." *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991).

Plaintiff claims that Defendant had knowledge of Plaintiff's mark and federal registration when selecting its own mark, suggesting bad faith on the part of Defendant. Opp. at 14. Defendant responds that there is no evidence of such intent, and intent should not be assumed simply because Defendant was the second party to seek a trademark. Reply at 7. The Court would tend to agree that evidence of intent on the part of Defendant to deceive the public by adopting a similar mark is lacking. For that reason, without further evidence, this factor does not weigh in favor of likelihood of confusion.

8. Likelihood of Expansion of the Product Lines

"The likelihood of expansion in product lines is relatively unimportant where two companies already compete to a significant extent." *GoTo.com*, 202 F.3d at 1209 (quoting *Brookfield Commc'ns*, 174 F.3d at 1060); *see also Playboy Enterprises*, 354 F.3d at 1029 ("Because the [defendants'] goods and [plaintiffs'] are already related . . . this factor is irrelevant").

Neither side addressed this factor in particular, and the Court considers this factor to be relatively unimportant.

9. Summation

In the end, summary judgment for a defendant is appropriate on trademark claims "where a court can conclude that the consumer confusion alleged by the trademark holder is highly unlikely by simply reviewing the product listing/advertisement at issue." *Multi Time Mach.*, 804 F.3d at 939. That is not the case here, and thus, the Court will not award Defendant summary judgment on the lack of likelihood of confusion. The *Sleekcraft* factors are "not a rote checklist," *see Network Automation*, 638 F.3d at 1145, but here, many of the *Sleekcraft* factors support a finding of likelihood of confusion, whereas others are either neutral or unimportant. Such inherently factual inquiries like the ones that exist in the instant trademark claims are precisely the reason why "summary judgment is generally disfavored in the trademark arena." *Interstellar*

*Starship Servs.*, 184 F.3d at 1109.  Additionally, there is the added factor of the presumption of validity given the fact that Plaintiff's trademark has been registered by the USPTO.  At trial, Plaintiff will, of course, bear the burden of proof on establishing a likelihood of consumer confusion.

IV. **Conclusion**

Based on the foregoing discussion, the Court **DENIES** the Motion.